**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL INDUSTRIES FOR THE BLIND,
1310 Braddock Place
Alexandria, VA 22314;

BOSMA INDUSTRIES FOR THE BLIND, INC.,
6270 Corporate Drive
Indianapolis, IN 46278; and

WINSTON-SALEM INDUSTRIES FOR THE BLIND, INC.
7730 North Point Drive
Winston-Salem, NC 27106,

Plaintiffs,

v.

THE DEPARTMENT OF VETERANS AFFAIRS, an agency of the United States of America,
810 Vermont Avenue NW
Washington, DC 20571;

DAVID SHULKIN, in his official capacity as SECRETARY OF THE DEPARTMENT OF VETERANS AFFAIRS,
810 Vermont Avenue NW
Washington, DC 20571; and

UNITED STATES OF AMERICA,

SERVE:
Channing D. Phillips, United States Attorney
United States Attorney's Office
555 4th Street
Washington, DC 20530

COPY:
The Honorable Jefferson B. Sessions,
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530,

Defendants.

Civil Action No. 17-992

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs National Industries for the Blind ("NIB"), Bosma Industries for the Blind, Inc. ("Bosma"), and Winston-Salem Industries for the Blind, Inc., doing business as IFB Solutions ("IFB"), by and through undersigned counsel, file this Complaint pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and allege as follows:

## NATURE OF THE ACTION

1. This lawsuit challenges final action of the Department of Veterans Affairs ("VA") that upends settled policy regarding the procurement priority for VA acquisitions. The new rule, which was issued without notice and comment, gives procurement priority to veteran-owned small businesses over qualified nonprofit agencies that employ people who are blind and severely disabled.

2. In the early part of the Twentieth Century, Congress established a procurement priority for the benefit of persons who are blind or severely disabled. In the Javits-Wagner-O'Day Act ("JWOD Act"), Congress established the AbilityOne Program to provide employment opportunities for the blind and severely disabled by authorizing them to manufacture products to sell to the federal government. *See* 41 U.S.C. §§ 8501-8506. The JWOD Act requires government purchasers, including the VA, to purchase products and services from participating, community-based nonprofit agencies dedicated to training and employing individuals who are blind and severely disabled. 41 U.S.C. § 8504(a).

3. More recently, Congress established a procurement priority for veteran-owned small businesses. In December 2006, Congress passed the Veterans Benefits, Health Care, and Information Technology Act of 2006 (the "Veterans Benefits Act" or "VBA"), which established the Veterans First Contracting Program ("VFCP"). 38 U.S.C. §§ 8127-2128. The VFCP

provides that the VA must give procurement priority to qualified veteran-owned small businesses if a "Rule of Two" is satisfied. The Rule of Two mandates that the VA must restrict a procurement to veteran-owned small businesses if, *inter alia*, there is a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers. 38 U.S.C. § 8127(d). In 2010, the VA promulgated a final rule implementing the VFCP in a way that retained the priority status for qualified nonprofit agencies that employ people who are blind and severely disabled.

4. In 2016, the Supreme Court of the United States prompted the VA to change the procurement priority for people who are blind and severely disabled. On July 16, 2016, the Supreme Court decided in *Kingdomware Technologies, Inc. v. United States*, 136 S. Ct. 1969, 1972 (2016), that the VA was required to adhere to the Rule of Two when awarding a contract or placing an order under a Federal Supply Schedule contract. In its first response to *Kingdomware*, the VA issued a Class Deviation from the Veterans Affairs Acquisition Regulation Supplement ("VAAR") that still gave mandatory priority to the AbilityOne Program consistent with the 2010 final rule.

5. On March 1, 2017, the VA reversed course, adopting a rule that now gives priority to veteran-owned small businesses over qualified nonprofit agencies that employ people who are blind and severely disabled. In particular, the VA issued a Class Deviation requiring VA contracting officers to purchase goods and services from the AbilityOne Program without conducting the VA Rule of Two analysis only if the contracting officer can readily determine that the goods and services were added prior to the 2010 rule implementing the VBA. However, contracting officers must conduct the Rule of Two analysis for all items added to the

Procurement List after the 2010 rule or if the data regarding when an item was added to the Procurement List is not readily available.

6. The 2017 Class Deviation violates the APA because it is substantively unlawful and procedurally defective. The VA departed from its prior policy without reasoned explanation, and it adopted an unreasonable interpretation of the VBA that ignores the mandatory language of the JWOD Act. In addition, the VA failed to comply with notice-and-comment procedures in the APA, Office of Federal Procurement Policy Act ("OFPPA"), and the Federal Acquisition Regulation ("FAR") prior to adopting the 2017 Class Deviation.

7. Accordingly, the Court should vacate and set aside the 2017 Class Deviation.

## THE PARTIES

8. Plaintiff NIB is a private nonprofit corporation organized and existing under the laws of the State of New York, having its principal place of business in Alexandria, Virginia. Established in 1938, NIB's mission is to enhance the economic and personal independence of people who are blind, primarily through creating, sustaining, and providing employment. One way in which NIB increases employment of the blind is by serving as the Central Nonprofit Agency ("CNA") authorized to represent the interests of the blind within the AbilityOne Program, a federal program administered by the U.S. AbilityOne Commission. NIB is suffering injury because the VA's action will reduce the number of contracts awarded by the VA to NIB's associated nonprofit agencies, which will reduce the fees that associated nonprofit agencies pay to NIB. In addition, as the representative of the nonprofit agencies for the blind, NIB has a strong interest in ensuring that the VA's action does not adversely impact employment opportunities for the blind.

9. Plaintiff Bosma is a private nonprofit corporation organized and existing under the laws of the State of Indiana, having its principal place of business in Indianapolis, Indiana.

Bosma's mission is to create opportunities for people who are blind or visually impaired by offering job training, employment programs, and rehabilitation services that enable independent living, including through serving as a qualified nonprofit agency ("NPA") within the AbilityOne Program. Bosma is suffering injury because the VA's action will reduce the VA's orders for Bosma's products. Under the AbilityOne Program, Bosma is a mandatory source of supply for the VA's purchase of hospital grade examination gloves, surgical gloves, and various kits. Prior to the VA's action, Bosma was entitled to receive all VA orders for those products from all Veterans Integrated Service Networks ("VISNs") once the products were placed on the U.S. AbilityOne Procurement List for the VA.

10. Plaintiff IFB is a private nonprofit corporation organized and existing under the laws of the State of North Carolina, having its principal place of business in Winston-Salem, North Carolina. IFB's mission is to provide opportunities for people who are blind or visually impaired and in need of training, employment, and services, including through serving as an NPA within the AbilityOne Program. IFB is suffering injury because the VA's action will reduce the VA's orders for IFB's products. Under the AbilityOne Program, IFB is a mandatory source of supply for the VA's purchase of eyeglasses and other vision-related products and, prior to the VA's action, IFB was entitled to receive all VA orders for those products for VISNs 2, 6, 7 and certain locations in VISN 8.

11. Defendant VA is "an executive department" of the United States government, 38 U.S.C. § 301, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). The VA is presently headquartered at 810 Vermont Avenue NW, Washington, DC 20571.

12. Defendant David Shulkin is the Secretary of Veterans Affairs and is responsible for the "control, direction, and management" of the VA. 38 U.S.C. § 303. Defendant Shulkin is sued in his official capacity as the Secretary of Veterans Affairs.

13. Defendant United States of America is an appropriate defendant under the Administrative Procedure Act, 5 U.S.C. § 703, as this action seeks judicial review of final agency action.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and is brought pursuant to the APA, 5 U.S.C. §§ 701-706. This Court has jurisdiction to review the VA's 2017 Class Deviation because it constitutes final agency action.

15. Venue is proper in this District because the VA is headquartered in the District of Columbia and because a substantial part of the events giving rise to the claims herein occurred within this judicial district. *See* 28 U.S.C. § 1391(e).

## FACTUAL BACKGROUND

### The Javits-Wagner-O'Day Act and AbilityOne Program

16. The JWOD Act established the AbilityOne Program to create employment opportunities for people who are blind or have other severe disabilities, 45,000 of whom are currently employed as a result of the AbilityOne Program. *See* 41 U.S.C. §§ 8501-8506. The AbilityOne Program is overseen by an independent federal agency, the Committee for Purchase from People Who Are Blind or Severely Disabled, also known as the U.S. AbilityOne Commission ("Commission").

17. The Commission is responsible for the maintenance of a "Procurement List" that includes all products and services determined by the Commission to be suitable for purchase by

the government from a qualified AbilityOne nonprofit agency. *See id.* § 8503(a). The Commission publishes additions and deletions from the list in the Federal Register, after a period of notice and comment. *See id.* The Commission is also responsible for determining the fair market price of the products and services on the Procurement List. *Id.* § 8503(b).

18. Once a product is on the Procurement List, government purchasers must give priority to purchasing products and services from the designated qualified nonprofit agencies dedicated to training and employing individuals with disabilities. The JWOD Act states that "[a]n entity of the Federal Government intending to procure a product or service on the procurement list referred to in section 8503 of this title ***shall procure*** the product or service from a qualified nonprofit agency for the blind or a qualified nonprofit agency for other severely disabled in accordance with regulations of the Committee and at the price the Committee establishes if the product or service is available within the period required by the entity." *Id.* § 8504(a) (emphasis added); *see also* 48 C.F.R. § 8.002 ("Priorities for use of mandatory Government sources").

19. The JWOD Act also authorizes the Commission to designate CNAs to "facilitate the distribution, by direct allocation, subcontract, or any other means, of orders of the Federal Government for products and services on the Procurement List among qualified nonprofit agencies." *Id.* § 8503(c)-(d); *see also* 41 C.F.R. § 51-3.2. The two designated CNAs are NIB and SourceAmerica (formerly "NISH"). *See* 41 C.F.R. § 51-3.1.

20. NIB does not receive any federal funding for serving as a CNA. Since 1938, NPAs for the blind have paid NIB a fee "for facilitating their participation in the AbilityOne Program." 41 C.F.R. §§ 51-3.5. Fees are "calculated based on nonprofit agency sales to the Government under the AbilityOne Program." *Id.*

**The Veterans Benefits, Health Care, and Information Technology Act of 2006**

21. On December 22, 2006, Congress passed the VBA. Pub. Law No. 109-461, 120 Stat 3403 (2006). Among other things, the VBA established the VFCP, providing that "a contracting officer of the Department shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States." 38 U.S.C. § 8127(d). This requirement is known as the "Rule of Two."

22. On August 20, 2008, the VA issued a notice for comments on a proposed rule to implement portions of the VBA. *See* 73 Fed. Reg. 49,141 (Aug. 8, 2008). The VA received 97 comments in response to the proposed rule. *See* 74 Fed. Reg. 64,619 (Dec. 8, 2009).

23. On December 8, 2009, the VA issued a final rule implementing the VFCP, effective January 7, 2010. *Id.* Because the final rule did not amend VAAR 808.002 (Priorities for use of Government supply sources), the AbilityOne procurement priorities in the Federal Acquisition Regulation ("FAR") continued to control. *See id.* at 64,622-23. To that end, in the preamble to the final rule, the VA explained that "[t]his rule will not negatively impact AbilityOne and its ability to continue to provide employment to disabled veterans. This rulemaking does not alter AbilityOne's status in the ordering preference for current or future items on the AbilityOne procurement list. . . . AbilityOne's priority status has not been changed as a result of this rule. Further, this rule does not impact items currently on the AbilityOne procurement list or items that may be added to the procurement list in the future." *Id.* at 64,622.

24. On April 28, 2010, the VA issued an internal information letter providing guidance to VA contracting activities regarding the VFCP and the AbilityOne Program. New

Guidelines for Placing Items and Services on the AbilityOne Procurement List, IL 001AL-10-06, Office of Acquisition and Logistics Information Letter (Apr. 28, 2010). The information letter stated:

> The Veterans First Contracting Program final rule does not affect AbilityOne's order of priority in relation to the Veterans First Contracting Program. Therefore, all items currently on the AbilityOne Procurement List as of January 7, 2010, will continue to take priority over the contracting preferences mandated by P.L. 109-461. However, all new requirements will be subject to the contracting preferences mandated by P.L. 109-461 prior to being considered for placement with the AbilityOne Program. This policy provides an equitable solution by ensuring VA's continued commitment to AbilityOne, while also recognizing the changes to VA's small business hierarchy.

*Id.* at 2. Thus, the VA continued to give preference to items on the Procurement List, even if the Commission added them after January 7, 2010, but the VA would not propose new items for the Procurement List or provide information to the Commission to support the Commission's decisions to add items to the Procurement List unless the Rule of Two analysis was first conducted.

**<u>2016 VA Policy Memorandum and Class Deviation</u>**

25. On July 16, 2016, the Supreme Court decided *Kingdomware*. In *Kingdomware*, a service-disabled veteran-owned small business argued that the VA was required to perform the Rule of Two analysis before procuring products from the General Services Administration's Federal Supply Schedule. 136 S. Ct. at 1974-75. Without mentioning the AbilityOne Program, the Supreme Court rejected the VA's argument that the Rule of Two analysis was not required once the VA had met its veteran-owned small business subcontracting goals for the year. *Id.* at 1972.

26. On July 25, 2016, the VA issued a policy memorandum to leadership throughout the VA, including "Head Contracting Activities, Directors, VHA Service Area Officers," and "Directors and Network Contract Managers, Veterans Integrated Service Networks," to comply

with the Supreme Court's decision in *Kingdomware*. VA Procurement Policy Memorandum (2016-05) – Implementation of the Veterans First Contracting Program as a Result of the U.S. Supreme Court Decision ("Policy Memorandum"). The Policy Memorandum included steps for conducting market research to comply with the VBA, transition guidance for active procurements, and guidance on compliance with other statutory mandates.

27. Regarding the AbilityOne Program, the Policy Memorandum stated:

> VA has a continuing requirement to comply with all statutory mandates. When a contracting officer is required by law to obtain goods and services from a specific source, the contracting officer shall carry out that mandate. These include supplies and services listed on the Procurement List issued by the Committee for Purchase from People Who Are Blind or Severely Disabled. Follow the procedures at FAR 8.705 for procuring listed items from the designated central non-profit agencies or the affiliated AbilityOne non-profits. To add new requirements to the Procurement List contracting officers shall comply with the requirements of Information Letter 001AL-10-06, "New Guidelines for Placing Items and Services on the AbilityOne Procurement List."

*Id.* at 11.

28. The Policy Memorandum also contained a Class Deviation from the VAAR to "amend the implementation of the Veterans First Contracting Program consistent with the decision of the United States Supreme Court." Class Deviation—Implementation of the Veterans First Contracting Program as a Result of the U.S. Supreme Court Decision (Class Deviation—Veterans First Contracting Program (VFCP 2016)). A class deviation is "[t]he issuance or use of a policy, procedure, solicitation provision, contract clause, method, or practice of conducting acquisition actions of any kind at any stage of the acquisition process that is inconsistent with the FAR." 48 C.F.R. § 1.401 (internal citations omitted); *see also* 48 C.F.R. § 801.404.

29. Consistent with the VA's 2010 final rule and 2010 Policy, the VA's 2016 Class Deviation from VAAR 808.002 gave mandatory priority to the AbilityOne Program:

> (iv) Supplies or services that are on the Procurement List maintained by the Committee for Purchase from People Who Are Blind or Severely Disabled, known as AbilityOne (FAR subpart 8.7), are mandatory sources. However, VA contracting officers shall, prior to adding any new VA requirements to the Procurement List, conduct market research, apply the VA Rule of Two to consider Vendor Information Pages (VIP) verified service-disabled veteran-owned small businesses (SDVOSBs) and veteran-owned small businesses (VOSBs) as required in 38 U.S.C. 8127 and implemented in subpart 819.70. All new VA requirements must be approved by the Chief Acquisition Officer, via the Senior Procurement Executive, before contacting the Committee for adding to the Procurement List.

*Id.* at Attach. 4.

30. The Policy Memorandum also contained a "Decision Tree" requiring contracting officers to first consider "Mandatory Sources" such as the AbilityOne Procurement List prior to conducting the Rule of Two analysis.

**2017 VA Class Deviation**

31. On March 1, 2017, the VA amended the July 2016 VAAR Class Deviation, specifically Attachment 4 of the July 2016 Class Deviation, which addressed VAAR 808.002. Class Deviation (Revised)—Implementation of the Veterans First Contracting Program (VFCP) as a Result of the U.S. Supreme Court Decision (Class Deviation—VFCP FEB 2017) (VAIQ #7773453) ("Amended Class Deviation").

32. The Amended Class Deviation reverses course from both the 2016 Class Deviation and the 2010 final rule. It requires VA contracting officers to purchase goods and services from the Procurement List without conducting the Rule of Two analysis only if the contracting officer can readily determine that the goods and services were added prior to the 2010 rule implementing the Veterans Benefits Act; however, contracting officers must conduct the Rule of Two analysis for all items added to the Procurement List after the 2010 rule or if the data regarding when an item was added to the Procurement List is not readily available.

33. The Amended Class Deviation for VAAR 808.002 states:

> Supplies on the Procurement List maintained by the Committee for Purchase from People Who Are Blind or Severely Disabled, known as AbilityOne (FAR subpart 8.7).
>
> (A) Supplies [and Services] on the Procurement List are mandatory only if:
>
> (1) The supplies [or services] were added to the Procurement List prior to January 7, 2010, and the date the supplies were added is readily available; or
>
> (2) The supplies [or services] were added to the Procurement List on or after January 7, 2010, the VA Rule of Two (see VAAR Class Deviation 802.101 definition) was applied prior to the addition of the supplies to the Procurement List, and that information is readily available.
>
> (B) The VA Rule of Two must be applied prior to VA requesting addition of new supplies [or services] to the Procurement List. On or after January 7, 2010, if supplies were added to the Procurement List at the request of an agency other than the VA, the VA Rule of Two will be applied prior to VA purchasing the supplies from the Procurement List.
>
> (C) When the VA Rule of Two is not satisfied and award to eligible SDVOSBs/VOSBs (pursuant to VAAR subpart 819.70) will not occur, the priority use of AbilityOne in accordance with FAR 8.002 applies.

*Id.* at 1-2.

34. The VA did not issue a notice or solicit comment prior to adopting the Amended Class Deviation.

**<u>Significant Impact on AbilityOne Nonprofit Agencies for the Blind and NIB</u>**

35. Procurements by the VA account for more than 15% of AbilityOne sales by qualified nonprofit agencies for the blind. Those sales provide jobs for approximately 800 blind or visually impaired individuals, including many veterans, all of which will be jeopardized by the VA's 2017 Class Deviation. The VA's action will also decrease the fees that qualified nonprofit agencies for the blind pay to NIB for facilitating their participation in the AbilityOne Program, thereby hindering NIB's ability to fulfill its mission of creating jobs for people who are blind.

36. Procurements by the VA account for approximately 97 and 22 percent of Bosma and IFB revenues, respectively. The VA's 2017 Class Deviation will result in Bosma losing at least $36 million in annual revenue, and IFB will lose at least $7.75 million in annual revenue. These revenues support direct employment of blind and impaired individuals as well as job training and rehabilitation programs for the blind community. Furthermore, IFB will lose an additional $8.8 million annually from the VA's failure to award the VISN 6 contract as required by the 2010 final rule and 2016 policy memorandum, for a total of $16.5 million in lost revenue annually.

37. In addition, Bosma currently employs at least 110 blind and visually impaired individuals in direct support of its AbilityOne contracts with the VA, while IFB currently employs 50 such individuals in direct support of its AbilityOne contracts with the VA. IFB plans to hire an additional 16 blind or visually impaired individuals to perform the VA VISN 6 contract expected to be awarded in accordance with the VA's 2010 final rule and 2016 policy memorandum. Both Bosma and IFB also employ veterans in direct support of their AbilityOne contracts with the VA. The VA's action will jeopardize Bosma's and IFB's ability to continue employing those individuals, who will experience great difficulty finding replacement jobs due to the nature of their severe impairment.

## COUNT 1
## (Administrative Procedure Act)

38. Paragraphs 1-37 are incorporated by reference herein.

39. Under the APA, a court must hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law." 5 U.S.C. § 706(2).

40. The 2017 VA Class Deviation is arbitrary, capricious, unsupported by a reasoned basis, and contrary to law because the VA ignored the mandatory language of the JWOD Act.

41. The 2017 VA Class Deviation is arbitrary, capricious, unsupported by a reasoned basis, and contrary to law because the VA departed from its 2010 final rule and 2010 policy without providing a reasoned explanation for the change.

42. The 2017 VA Class Deviation is procedurally defective because the VA failed to comply with notice-and-comment requirements in the APA, OFPPA, and the FAR.

43. The 2017 VA Class Deviation is otherwise arbitrary, capricious, unsupported by a reasoned basis, and contrary to law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendants and award Plaintiffs the following relief:

1. A declaration that the 2017 VA Class Deviation violates the APA, OFPPA, and the FAR;

2. A permanent injunction prohibiting enforcement of the 2017 VA Class Deviation;

3. An award of Plaintiffs' costs, including their reasonable attorneys' fees, as appropriate; and

4. An award of any further relief that the Court deems just and proper.

Respectfully submitted,

Date: May 24, 2017

/s/ Stephen J. Obermeier_______________
Stephen J. Obermeier (D.C. Bar No. 979667)
sobermeier@wileyrein.com
Tracye Winfrey Howard (application pending)
twhoward@wileyrein.com
Stephen J. Kenny (D.C. Bar No. 1027711)
skenny@wileyrein.com
George E. Petel (D.C. Bar No. 1028877)
gpetel@wileyrein.com
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
Tel.: (202) 719-7000
Fax: (202) 719-7049

*Attorneys for Plaintiffs National Industries for the Blind, Bosma Industries for the Blind, and Winston-Salem Industries for the Blind*

Of counsel:

Thomas F. Bedsole
FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
Indianapolis, IN 46244-0961
Tel.: (317) 237-3842
Fax: (317) 237-3900
tbedsole@fbtlaw.com
*Attorney for Bosma Industries for the Blind*

James K. Kearney (D.C. Bar No. 238147)
WOMBLE CARLYLE
8065 Leesburg Pike, Fourth Floor
Tysons Corner, VA 22182
Tel.: (703) 394-2214
Fax: (703) 918-2269
jkearney@wcsr.com
*Attorney for Winston-Salem Industries for the Blind*