## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL INDUSTRIES FOR THE BLIND, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No.  1:17-cv-00992-KBJ |
| THE DEPARTMENT OF VETERANS AFFAIRS, *et al.*, | |
| Defendants, | |

## PLAINTIFFS' OPPOSITION TO THE DEPARTMENT OF VETERANS AFFAIRS' MOTION TO STAY THE PROCEEDINGS

"On a motion for stay, it is the movant's obligation to justify the court's exercise of such an extraordinary remedy." *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985).  The Department of Veterans Affairs ("VA")—which argues that this Court should stay this action pending final disposition of a **_bid protest_** decided by the Court of Federal Claims and currently on appeal to the Federal Circuit, *PDS Consultants, Inc. v. United States*, No. 16-cv-1063-NBF (Fed. Cl.)—has failed to demonstrate that such a remedy is appropriate here.  As a result, its motion should be denied.

The VA's characterization of *PDS* as a "factually related case" subject to the "first-filed rule" is misplaced.  This rule does not apply here because the cases involve different parties, different claims, and different requests for relief.  Plaintiffs here—National Industries for the Blind ("NIB"), Bosma Industries for the Blind, Inc. ("Bosma"), and Winston-Salem Industries for the Blind, Inc. ("IFB")—have challenged the legality of the VA's March 2017 Class Deviation under the Administrative Procedure Act ("APA"), including a challenge to the procedures by which the

VA promulgated the Class Deviation.  Plaintiffs seek injunctive and declaratory relief prohibiting enforcement of the 2017 Class Deviation.  In *PDS*, on the other hand, plaintiff PDS filed a bid protest challenging application of the 2016 Class Deviation with respect to only four contracts.  Although the 2017 Class Deviation was ultimately issued and then addressed by the Court of Federal Claims, the court simply did not have occasion, let alone jurisdiction, to adjudicate the lawfulness of the 2017 Class Deviation or grant the equitable relief requested in this case.  No matter what happens in *PDS* on appeal, this Court will still be required to adjudicate the merits of this case.

Moreover, the VA's motion fails to meet this Court's requirement that "[t]he party requesting such a stay must make out a clear case of hardship or inequity in order to prevail." *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).  The VA has not even attempted to carry this heavy burden and ignores that staying this action will result in significant hardship for Plaintiffs.  A stay will permit the VA to conduct procurements according to the unlawful 2017 Class Deviation and deny Plaintiffs IFB and Bosma contracts for which they are the mandatory source of supply until the *PDS* appeal has reached its conclusion—likely more than a year from now.  IFB and Bosma will suffer irreparable harm if they lose contracts the VA would otherwise be obligated to award to them as a result of the arbitrary and capricious 2017 Class Deviation.

Because the first-filed rule does not apply to this case, and the VA has not established that it would suffer hardship in the absence of a stay, the VA's motion should be denied.

## **BACKGROUND**

This case arises from the VA's issuance of a Class Deviation on March 1, 2017.  Prior to that date, the VA complied with the Javits-Wagner-O'Day ("JWOD") Act, 41 U.S.C. § 8504(a),

by granting procurement priority to items on the U.S. AbilityOne Commission Procurement List, which consists of products and services from designated qualified nonprofit agencies dedicated to training and employing individuals with disabilities.  In 2006, Congress passed the Veterans Benefits, Health Care, and Information Technology Act ("VBA").  One provision of the VBA mandated that the VA restrict a procurement to veteran-owned small businesses if there is a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers. 38 U.S.C. § 8127(d).  For more than a decade following passage of the VBA, the VA continued to recognize the priority status of products and services on the Procurement List. But, on March 1, 2017, the VA reversed course and issued its Class Deviation, which reserved priority status only to those products and services added to the Procurement List before January 2010.

Plaintiffs here allege that the 2017 Class Deviation violated the APA because it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law."  Compl. ¶ 39 (quoting 5 U.S.C. § 706(2)).  Specifically, Plaintiffs allege that the 2017 Class Deviation conflicts with the JWOD Act, that the VA departed from an existing rule and policy without reasoned explanation, and that the VA failed to comply with notice-and-comment requirements in the APA, Office of Federal Procurement Policy Act ("OFPPA"), and Federal Acquisition Regulation ("FAR").  *Id.* ¶¶ 40-43.  If allowed to remain in place, the 2017 Class Deviation will harm NIB, by reducing the number of contracts awarded to its associated nonprofit agencies, and Bosma and IFB by reducing the VA's orders of their products and services. *Id.* ¶¶ 8-10.  Plaintiffs asked the Court for a declaration that the 2017 Class Deviation violates the APA, OFPPA, and the FAR and for a permanent injunction prohibiting its enforcement.

The ongoing bid protest that the VA argues justifies a stay of the instant case was filed on August 25, 2016 in the Court of Federal Claims and challenged the VA's award or intended award of four contracts to IFB based on the 2016 Class Deviation.  Specifically, the plaintiff, PDS Consultants, challenged the VA's purchase of eyeglasses and related products from IFB in accordance with the JWOD Act, the Procurement List, and the VA's then-current policy, arguing that the VBA required the VA to prioritize veteran-owned small businesses in the procurements at issue and that the VA's policy granting priority to items on the Procurement List was unlawful. The VA issued the 2017 Class Deviation during this litigation, but the court rejected the VA's application of the Class Deviation to two IFB contracts for items added to the Procurement List prior to January 2010.  The court held that the VBA trumps the JWOD Act with respect to all VA procurements.  IFB, an intervenor-defendant in *PDS*, has appealed the decision to the Federal Circuit.  *See* Notice of Appeal, *PDS*, No. 16-cv-1063 (Fed. Cl. filed July 28, 2017) (Dkt. No. 91).

## ARGUMENT

The VA presents only one argument in support of its motion to stay the proceedings before this Court:  that *PDS* is a "factually related case," and, thus, this action should be stayed under the "first-filed rule."  Dkt. No. 20-1 at 10-11.[1]  The motion should be rejected for two reasons.  First, *PDS* is not a factually related case, and the first-filed rule therefore does not apply.  Second, the

---

[1] The VA also asserts in conclusory fashion that the "more general[]" principle that "parallel litigation of factually related cases in separate fora is inefficient" favors a stay.  *See* Dkt. No. 20-1 at 9 (quoting *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003)). Of course, the Court has the inherent power to stay proceedings for reasons of efficiency.  *See Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998).  But the VA does not explain how it is inefficient to proceed in a case involving **different** parties with **different** claims than those at issue in *PDS*.  These claims will have to be heard by this Court at some point in time.  More importantly, as explained in Section II, the VA bears the burden of establishing that it will suffer hardship in the absence of a stay, especially because the Plaintiffs will suffer hardship as long as the 2017 Class Deviation remains in place.  The VA's exclusive reliance on efficiency concerns does not meet this burden.

VA has not carried its heavy burden to show that it would be harmed in the absence of a stay. Proving hardship is particularly necessary where, as here, the stay would harm the non-moving party.

## I.     The First-Filed Rule Does Not Apply To This Case.

As the VA explained in its brief, under the first-filed rule, "[c]onsiderations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the *same case* simultaneously." Dkt. No. 20-1 at 8 (emphasis added) (quoting *Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980)). In other words, the first-filed rule applies "where two cases between the *same parties* on the *same cause of action*" are proceeding in different courts. *Id.* (emphases added). For example, the court in *UtahAmerican Energy, Inc. v. Department of Labor* held that a stay was appropriate where the same plaintiff filed FOIA suits in two courts seeking the same documents. 685 F.3d 1118, 1124 (D.C. Cir. 2012). In *Furniture Brands International, Inc. v. U.S. International Trade Commission*, there was "no question" the cases involved the same parties and same cause of action, because, "[i]n both cases, plaintiff contend[ed] that the [statutory] definition of 'affected domestic producer' violate[d] the First Amendment" and sought the same relief from the courts. 804 F. Supp. 2d 1, 4 (D.D.C. 2011). And, in *International Painters & Allied Trades Industry Pension Fund v. Painting Co.*, the parallel case involved the same parties and the same "underlying contractual obligations." 569 F. Supp. 2d 113, 116 (D.D.C. 2008).

This case does not meet the requirements of the first-filed rule because the parties are not identical and the cause of action is separate and distinct from the cause of action in *PDS*. Indeed, by the VA's own admission, the parties "overlap significantly" but are not identical, and the cause of action in *PDS* merely "bears upon the instant case." Dkt. No. 20-1 at 10. With respect to the

first first-filed rule criterion, the parties in *PDS* were PDS, the United States, and IFB.  Because NIB and Bosma were not parties in *PDS*, the first-filed rule cannot apply to their claims before this Court.

The causes of action and requests for relief in the two cases are also entirely different.  All the Plaintiffs here have asserted claims and sought relief pursuant to the APA that were not only not at issue in *PDS*, but were outside the jurisdiction of the Court of Federal Claims.  Specifically, Plaintiffs seek invalidation of the 2017 Class Deviation under the APA and have alleged that the VA did not supply an adequate explanation for its policy reversal and did not comply with notice-and-comment rulemaking requirements.  Compl. ¶¶ 41-42.  Plaintiffs seek a declaratory judgment that the 2017 Class Deviation violates the APA, OFPPA, and the FAR, and they also seek a permanent injunction against enforcement of the 2017 Class Deviation.

*PDS*, on the other hand, involves a much narrower challenge.  There, the plaintiff brought a bid protest pursuant to 28 U.S.C. § 1491(b)(1), alleging that the VA's application of the relevant statutes with respect to four contracts awarded or to be awarded to IFB was contrary to law.  *PDS Consultants, Inc. v. United States*, 132 Fed. Cl. 117, 125 (2017).  The court was thus not confronted with APA claims.  In fact, the court could not have addressed such claims because "the APA grants jurisdiction over judicial review of final agency decisions to the United States district courts and not the United States Court of Federal Claims."  *Faison v. United States*, 102 Fed. Cl. 637, 641 (2012) (citing *McNabb v. United States*, 54 Fed. Cl. 759, 767 (2002)).  Nor did the Court of Federal Claims have jurisdiction to order the declaratory or injunctive relief requested here.  *Id.* at 643.  Thus, the court in *PDS* not only did not address the relevant issues in this APA case, it lacked jurisdiction to address them.

The VA also misapplies the equitable factors that must be considered even assuming, *arguendo*, that the cases are factually related.  The VA argues that the nine-month difference between the filing of each action favors application of the first-filed rule.  Dkt. No. 20-1 at 11.  But, of course, Plaintiffs could not have challenged the Class Deviation until it was issued in March 2017—six months after PDS filed its bid protest at the Court of Federal Claims.  This sequence of events only underscores the distinct causes of action in the two cases.  The *PDS* case did not even involve the regulatory action at issue here when it was first filed.

The VA's contention that this Court should defer ruling on Plaintiffs' claims until a court with "expertise as to federal contracting issues" has resolved *PDS* is also without merit.  *Id.*  Again, the VA ignores the differences in the causes of action.  *PDS* is a bid protest requiring expertise in federal contracting issues.  The Federal Circuit will not address Plaintiffs' APA claims in the *PDS* appeal because they were not before the Court of Federal Claims in the bid protest, and it lacks jurisdiction to do so.  This is an APA case no different than any of the many APA cases this Court adjudicates on a regular basis.  There is nothing unique about federal contracting law that would render this Court incapable of addressing Plaintiffs' claims.

Finally, a stay based on the outcome of a collateral proceeding is appropriate only where the other proceeding's effect on the underlying action is certain.  *See Wrenn v. Dist. of Columbia*, 179 F. Supp. 3d 135, 140 (D.D.C. 2016) ("Once again, if it were ***certain*** that a decision on the interlocutory appeal would moot these proceedings, then going forward in this case at this time would be a needless use of judicial resources.  But the impact of any such decision is, in actuality, far from certain." (emphasis in original)).  Here, given that the parties, causes of action and jurisdictions of the trial courts differ, the outcome of the *PDS* case will not—and cannot—

extinguish the need for any further proceedings in this case.  At most, *PDS* will result in another nonbinding decision addressing the issues before this Court.

## II.    The VA Has Not Carried Its Burden To Show Hardship In The Absence Of A Stay.

The VA also ignores its burden, as the moving party, to justify the extraordinary remedy of a stay of all proceedings.  *Wrenn*, 179 F. Supp. 3d at 139-40.  "[A] party requesting a stay of proceedings 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'"  *Id.* at 137 (quoting *Landis*, 299 U.S. at 255).  The VA has not even attempted to show any hardship that would result for the agency from continuation of this case.

In contrast, the stay the VA seeks will work significant damage on Plaintiffs because it will leave in place the VA's 2017 Class Deviation that deprives IFB and Bosma of contracts they otherwise would be awarded as the mandatory sources of supply under the JWOD Act and decreases the associated fees paid to NIB.  Now that an appeal has been noticed in *PDS*, this deprivation could conceivably last for years and have a devastating effect on Plaintiffs. Procurements by the VA account for approximately 97 and 22 percent of Bosma and IFB revenues, respectively.  Compl. ¶ 36.  The stay requested by the VA threatens more than "a fair possibility" of hardship for the Plaintiffs.  *Wrenn*, 179 F. Supp. 3d at 137.  Leaving the 2017 Class Deviation in place "threatens the very existence" of the Plaintiffs' businesses.  *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985) (explaining when economic loss constitutes irreparable harm).

In light of the damage the stay would cause Plaintiffs, the VA is required to "make out a clear case of hardship or inequity in being required to go forward."  *Wrenn*, 179 F. Supp. 3d at 139.  This the VA has not done.

## CONCLUSION

The Plaintiffs respectfully ask the Court to deny the VA's motion to stay.

Respectfully submitted,

Date: July 31, 2017                         /s/ Stephen J. Obermeier
                                            Stephen J. Obermeier (D.C. Bar No. 979667)
                                            Tracye Winfrey Howard (D.C. Bar No. 983132)
                                            Samantha S. Lee (D.C. Bar No. 1009162)
                                            Stephen J. Kenny (D.C. Bar No. 1027711)
                                            George E. Petel (D.C. Bar No. 1028877)
                                            WILEY REIN LLP
                                            1776 K Street, NW
                                            Washington, DC  20006
                                            Tel.: (202) 719-7000
                                            Fax: (202) 719-7049

                                            *Attorneys for Plaintiffs National Industries for the
                                            Blind, Bosma Industries for the Blind, and Winston-
                                            Salem Industries for the Blind*

Of counsel:

Thomas F. Bedsole
FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
Indianapolis, IN 46244-0961
Tel.: (317) 237-3842
Fax: (317) 237-3900
tbedsole@fbtlaw.com
*Attorney for Bosma Industries for the Blind*

James K. Kearney (D.C. Bar No. 238147)
WOMBLE CARLYLE
8065 Leesburg Pike, Fourth Floor
Tysons Corner, VA 22182
Tel.: (703) 394-2214
Fax: (703) 918-2269
jkearney@wcsr.com
*Attorney for Winston-Salem Industries for the Blind*