# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL INDUSTRIES FOR THE BLIND, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| DEPARTMENT OF VETERANS AFFAIRS, *et al.*, | ) ) ) | |
| Defendants. | ) ) | No. 17-cv-0992 (KBJ) |
| ALPHAPOINTE, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DEPARTMENT OF VETERANS AFFAIRS, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANTS' MOTION TO STAY THE INSTANT PROCEEDINGS

On May 30, 2017, the United States Court of Federal Claims resolved a dispute about the procurement policy that Congress intended for the Department of Veterans Affairs ("the VA") to use when deciding whether the products of veteran-owned small businesses will be prioritized over those made by small businesses that employ blind and severely disabled individuals. *See PDS Consultants, Inc. v. United States*, 132 Fed. Cl. 117 (Fed. Cl. 2017). The Court of Federal Claims held, in essence, that when the VA seeks to procure goods and services, veteran-owned small businesses get preference

1

over those that employ the blind and disabled, *see PDS Consultants*, 132 Fed. Cl. at 128, and this ruling—which involved the resolution of an apparent conflict between the Javits-Wagner-O'Day Act ("JWOD"), 41 U.S.C. §§ 8501–06 (requiring federal agencies to purchase certain items from small businesses that employ blind and disabled individuals), and the Veterans Benefits, Health Care, and Information Technology Act of 2006 ("VBA"), 38 U.S.C. §§ 8127–28 (mandating that the VA limit competition for its procurement to veteran-owned small businesses under certain conditions)—is currently on appeal to the Federal Circuit.

In the instant consolidated cases, Plaintiffs National Industries for the Blind, Bosma Industries for the Blind, Winston-Salem Industries for the Blind (collectively, "NIB Plaintiffs") and Plaintiff Alphapointe have brought their own, substantively similar challenges to the VA's procurement practices. (*See generally* NIB Compl., ECF No. 1; Alphapointe Compl., ECF No. 25.) Before this Court at present is a motion that Defendants VA, VA Secretary David Shulkin, and the United States of America have filed—and that Defendant-Intervenor PDS Consultants ("PDS") supports—requesting a stay of the instant proceedings pending the Federal Circuit's ruling in *PDS Consultants*. (*See* Mem. in Supp. of Defs.' Mot. to Stay Proceedings ("Mot. to Stay"), ECF No. 20-1; *see also* PDS's Resp. in Supp. of Defs.' Mot. to Stay Proceedings ("PDS Stay Br."), ECF No. 29.) Defendants point out that the complaints at issue here raise similar legal issues to those that are now pending in the case before the Federal Circuit, and that the parties overlap; therefore, Defendants request a stay in the interest of judicial efficiency. (*See* Mot. to Stay at 10; PDS Stay Br. at 3–5.)[1] In opposition to the stay

---

[1] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

motion, Plaintiffs argue, among other things, that the instant cases involve claims that are different than those in *PDS Consultants*, and that the parties are largely distinct; indeed, other than the VA defendants, only two of the five parties in the consolidated matters before this Court are also parties in the Federal Circuit case. (*See* Pls.' Opp'n to VA's Mot. to Stay Proceedings ("NIB Opp'n"), ECF No. 22, at 4–8; Pl. Alphapointe's Opp'n to Defs.' Mot. to Stay Proceedings ("Alphapointe Opp'n"), ECF No. 28, at 10–12.)

For the reasons explained fully below, this Court has concluded that Defendants' motion to stay the instant proceedings must be **DENIED**. In short, Defendants have failed to carry their burden of demonstrating that a stay of the instant proceedings is warranted. Moreover, given that the VA is currently implementing the challenged procurement policy and has expressed its intention to continue to do so during the pendency of the Federal Circuit appeal (*see* Defs.' Notice, ECF No. 42), equitable considerations weigh heavily against the requested stay.

## I.    BACKGROUND

### A.    Factual Background

At issue in the present case is the potential tension between two federal statutes that establish certain contracting priorities that the VA must implement when it undertakes procurements for goods or services. (*See* Alphapointe Compl. ¶¶ 2–4; NIB Compl. ¶¶ 2–3.) The JWOD, which was initially passed in 1938 and was amended in 1971, requires all government agencies (including the VA) to purchase certain products and services from designated nonprofits that employ blind and otherwise severely disabled people. *See* 41 U.S.C. §§ 8501–06. Under the JWOD's statutory scheme, the

United States AbilityOne Commission, an independent agency, is charged with maintaining a procurement list, and "[a]n entity of the federal Government intending to procure a product or service on the procurement list . . . shall procure the product or service" from a qualified nonprofit on that list. *Id.* § 8504(a). The AbilityOne Commission also oversees the addition of items to the procurement list (hereinafter called "the AbilityOne List"). *See id.* § 8503(a). Thus, by statute and regulation, certain designated non-profit manufacturers have long been preferred with respect to procurements in the government-contracting realm.[2]

More recently, in 2006, Congress enacted the VBA, which, among other things, established the Veterans First Contracting Program ("VFCP"). The VFCP applies only to procurement by the VA, and requires that agency to set goals for providing contracts to veteran-owned small businesses. *See* 38 U.S.C. § 8127(a). It also directs the VA to give procurement priority to veteran-owned small businesses under certain conditions. Specifically, before undertaking a procurement, VA contracting officers must conduct an analysis—commonly referred to as the "Rule of Two"—to determine whether there are at least two veteran-owned small businesses capable of performing the work. *See id.* § 8127(d). If the officer has a "reasonable expectation" that at least two such contractors will submit offers and that "the award can be made at a fair and reasonable price that offers best value to the United States[,]" the VA must limit competition for that contract to veteran-owned small businesses only. *Id.*

Since the passage of the VBA, the VA has issued a number of regulations and policies that guide its contracting officers in applying the respective priorities embodied

---

[2] The regulations that implement this mandate are enshrined in the Federal Acquisition Regulations ("FAR"). *See* 48 C.F.R. subpart 8.7.

in the JWOD and the VBA.[3]  For example, when the VA initially promulgated the rule that implements the VBA, it did so in a way that maintained AbilityOne's priority status.  (*See* Alphapointe Compl. ¶ 4; NIB Compl. ¶ 3.)  Then, in 2016, the Supreme Court held that the VA must conduct the Rule of Two analysis when awarding contracts under the Federal Supply Schedule, *see Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969 (2016), and in response to that decision, the VA issued a new policy in the form of a "Class Deviation" from the VA Acquisition Regulation ("the VAAR") ("the 2016 Class Deviation"), but kept the policy requiring mandatory priority for the AbilityOne program intact.  (*See* Alphapointe Compl. ¶ 5; NIB Compl. ¶ 4.)[4]

In March of 2017, the VA issued an amended Class Deviation ("the 2017 Class Deviation").  (*See* Alphapointe Compl. ¶ 38; NIB Compl. ¶ 31.)  The 2017 Class Deviation requires VA contracting officers to conduct the aforementioned Rule of Two analysis before purchasing certain items on the AbilityOne List, depending upon *when* the items were added to the list.  For any items added to the AbilityOne List on or after January 7, 2010—the date on which the VA issued its initial regulations implementing the VBA—the Rule of Two analysis is required.  (*See* Alphapointe Compl. ¶¶ 39–40; NIB Compl. ¶¶ 32–33.)  But for items that were added to the AbilityOne List before January 7, 2010, the 2017 Class Deviation requires VA contracting officers to continue

---

[3] For a summary of the various policies the VA has issued over the years, *see Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969 (2016), and *Angelica Textile Servs., Inc. v. United States*, 95 Fed. Cl. 208 (Fed. Cl. 2010).

[4] In this context, a class deviation is "[t]he issuance of policies or procedures that govern the contracting process or otherwise control contracting relationships that are not incorporated into agency acquisition regulations[,]" in this case the VAAR.  48 C.F.R. § 1.401; *see also id.* § 801.404 (granting VA procurement leadership the authority to "authorize class deviations from the FAR and VAAR when a class deviation is in the best interest of the Government").

to purchase the items from AbilityOne nonprofits without applying the Rule of Two. (*See id.*)

The Court of Federal Claims entertained a challenge to the 2017 Class Deviation in the context of a bid protest that a veteran-owned small business brought in *PDS Consultants, Inc. v. United States*, 132 Fed. Cl. 117 (Fed. Cl. 2017).[5] In that case, PDS (the Defendant-Intervenor in the instant consolidated cases) filed a bid protest action against the VA to challenge the agency's purchase of eyewear from Winston-Salem Industries for the Blind (a nonprofit that intervened as a defendant in the *PDS Consultants* matter and is one of the plaintiffs here). *See id.* at 119–20. On May 30, 2017, the Court of Federal Claims issued an opinion finding that the VA should have applied the Rule of Two to all procurements that had taken place after the passage of the VBA in 2006, regardless of when the product or service was placed on the AbilityOne List. *See id.* at 126. That court thus concluded that the 2017 Class Deviation was "contrary to the VBA statute" insofar as that policy suggested that "items added to the List prior to 2010 are forever excepted from the VBA's requirements[,]" and as a result, the court rejected the VA's application of the 2017 Class Deviation to the eyewear contracts at issue. *Id.* at 128.

Winston-Salem noticed an appeal in the *PDS Consultants* case on July 28, 2017. (*See* Ex. 1 to Resp. of NIB Pls. to Defs.' Notice, Docketing Statement, *PDS Consultants, Inc. v. United States*, No. 17-2379 (Fed. Cir. Sept. 1, 2017) ("*PDS* Appeal Docketing Statement"), ECF No. 45-1, at 2.) And because the Court of Federal Claims

---

[5] Although the bid protest action was initially brought in 2016, the court in *PDS Consultants* ultimately addressed the 2017 Class Deviation because that policy was issued while that litigation was pending. *See PDS Consultants*, 132 Fed. Cl. at 124–25.

has granted a stay of its judgment pending appeal, *see PDS Consultants, Inc. v. United States*, No. 16-1063C, 2017 WL 3821803, at *1 (Fed. Cl. Sept. 1, 2017), the VA has continued to implement the 2017 Class Deviation with respect to its procurements, even as the parties are presently litigating issues related to that policy in the Federal Circuit. (*See* Defs.' Notice at 2; *see also PDS* Appeal Docketing Statement at 3 (stating that whether the VA must perform the Rule of Two analysis under the VBA before it purchases items from AbilityOne nonprofits is one of the issues to be decided on appeal).)

### B.    Procedural History

On May 24, 2017, the NIB Plaintiffs filed a complaint in this Court that claimed that the 2017 Class Deviation is both substantively unlawful and procedurally defective under the Administrative Procedure Act ("APA").  (*See* NIB Compl. ¶ 6.)  The NIB Plaintiffs argue that the 2017 Class Deviation reflects "an unreasonable interpretation of the VBA that ignores the mandatory language of the JWOD Act[,]" and these Plaintiffs also allege that the VA issued the 2017 Class Deviation without complying with the notice-and-comment requirements of the APA, the Office of Federal Procurement Policy Act ("OFPPA"), and the FAR.  (*See id.*)  As relief, the NIB Plaintiffs seek a declaration that the 2017 Class Deviation violates the APA, the OFPPA, and the FAR (*see id.*, Request for Relief, ¶ 1), as well as a permanent injunction prohibiting enforcement of the 2017 Class Deviation (*see id.*, Request for Relief, ¶ 2).

Plaintiff Alphapointe filed its complaint on July 28, 2017.  (*See* Alphapointe Compl. (originally filed in Civ. No. 17–1528); *see also* Notice of Related Case, ECF No. 23.)  Alphapointe challenges the 2017 Class Deviation, as well as an alleged newer

VA procurement policy that is purportedly reflected in a June 2017 email that Alphapointe received from the VA. (*See* Alphapointe Compl. ¶¶ 44–46.) Alphapointe argues that the VA's policy regarding government-contracting preferences violates the APA because the agency has arbitrarily and capriciously ignored the requirements of the JWOD, and because the agency has failed to adhere to the notice-and-comment requirements of the APA. (*See id.* ¶¶ 54–57.) As relief, Alphapointe seeks a declaration that the 2017 Class Deviation violates the APA, as well as preliminary and permanent injunctions prohibiting the VA from enforcing the 2017 Class Deviation. (*See id.*, Request for Relief, ¶¶ 1–3.)[6] This Court consolidated the NIB Plaintiffs' and Alphapointe's cases on August 4, 2017.

In a motion filed on July 17, 2017, Defendants have asked this Court to stay the instant proceedings pending the Federal Circuit's resolution of the *PDS Consultants* case. (*See generally* Mot. to Stay.) Defendants argue that, because *PDS Consultants* is factually related to the matters at hand, "considerations of consistency and judicial efficiency warrant application of the court-developed rule of practice by which the second-filed case is stayed[.]" (*Id.* at 1.) Defendant-Intervenor PDS also supports the stay on the grounds of judicial efficiency, and it further argues that both it and the government would suffer hardship in the absence of a stay. (*See* PDS Stay Br. at 2, 5.) For their part, the NIB Plaintiffs and Alphapointe vigorously oppose staying the instant proceedings; they argue that this case should go forward despite the Federal Circuit appeal because *PDS Consultants* involves different parties, different facts, and different causes of action. (*See* Alphapointe Opp'n at 4; NIB Opp'n at 5.) Plaintiffs also

---

[6] This Court denied Alphapointe's motion for a preliminary injunction in an oral ruling during a hearing that the Court held on September 15, 2017. (*See* Hr'g Tr., ECF No. 41, at 66:10–74:20.)

contend that a stay is not warranted because the government Defendants have not shown that they would suffer any hardship if the action is allowed to proceed.  (*See* Alphapointe Opp'n at 4; NIB Opp'n at 2.)

At a motion hearing on September 15, 2017, this Court heard the parties' arguments regarding the motion to stay and subsequently asked counsel for the government Defendants to clarify whether the VA would continue to implement the 2017 Class Deviation during the pendency of the Federal Circuit appeal.  The government Defendants filed a notice on September 29, 2017, informing the Court that "after considering the issues involved, the VA currently intends to continue applying the March 2017 Class Deviation with respect to items on the AbilityOne List while the *PDS* appeal is pending in the Federal Circuit."  (Defs.' Notice at 2.)  In response to this notice, Plaintiffs filed supplemental oppositions to the motion to stay.  (*See* Alphapointe's Reply to Defs.' Notice, ECF No. 44; Response of NIB Pls. to Defs.' Notice ("NIB Resp. to Defs.' Notice"), ECF No. 45.)

## II.     MOTIONS TO STAY PROCEEDINGS PENDING LEGAL ACTION ELSEWHERE

District courts have broad discretion to stay all proceedings in an action pending the resolution of independent legal proceedings.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  The authority to stay proceedings stems from "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (internal quotation marks and citation omitted).  In considering a stay, courts must "weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to

the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254–55) (internal quotation marks omitted). In other words, hardship to the parties and benefits to judicial economy are the key interests to consider in evaluating a motion for a stay. *See Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016).

Despite the broad discretion afforded to the courts in granting a stay, it is well established that a stay pending the resolution of unrelated legal proceedings is an extraordinary remedy. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. Thus, the party seeking a stay bears the burden of showing that the stay is needed and warranted. If there is "even a fair possibility" that a stay would adversely affect another party, the movant for the stay must demonstrate a "clear case of hardship or inequity in being required to go forward." *Id.* Moreover, and notably, "[a] stay is not a matter of right, even if irreparable injury might otherwise result." *Indiana State Police Pension Trust v. Chrysler LLC*, 129 S. Ct. 2275, 2776 (2009).

## III.    ANALYSIS

The government Defendants and the Defendant-Intervenor essentially make three arguments in support of the motion to stay proceedings: (1) that the first-filed rule applies and requires this Court to stand down pending the Federal Circuit's decision; (2) that in the balance of the equities, there would be more hardship from continuing the proceedings than from staying them; and (3) that judicial economy considerations justify the stay. As explained below, in this Court's view, none of these arguments is

persuasive, and at the end of the day, Defendants have failed to carry their burden of demonstrating that a stay of proceedings is warranted.

### A. The First-Filed Rule Does Not Apply

Defendants' opening salvo is to invoke the 'first-filed' rule and to argue that the overlap between the parties in this case and the *PDS Consultants* case means that the instant action should be held in abeyance while *PDS Consultants* proceeds. (*See* Mot. to Stay at 2 (maintaining that the instant situation "fits squarely within the 'first-filed' rule, making a stay of this second-filed case appropriate").) But the first-filed rule has a long, distinguished pedigree in this Circuit, and it is deemed to apply only when "two cases *between the same parties* [and] *on the same cause of action* are commenced in two different Federal courts[.]" *Wash. Metro. Area Transit Auth. v. Ragonese,* 617 F.2d 828, 830 (D.C. Cir. 1980) (emphasis added); *see also UtahAmerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (explaining that "[c]onsiderations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously" (internal quotation marks and citations omitted)).

Thus, the first-filed rule is inapposite here, as the instant case generally involves neither the same parties nor the same causes of action as *PDS Consultants*. In fact, the party-related overlap upon which Defendants rely pertains only to two of the non-government entities—Winston-Salem Industries for the Blind and PDS—while the other three Plaintiffs in the instant case—National Industries for the Blind, Bosma Industries for the Blind, and Alphapointe—are not parties in *PDS Consultants*. (*See* NIB Opp'n at

6; Alphapointe Opp'n at 10–11.)[7]  It is also clear that the instant matter and *PDS Consultants* arise under entirely different causes of action and require distinct remedies. Specifically, *PDS Consultants* is a bid protest action brought under 28 U.S.C. § 1491(b)(1), and that case involves several specific VA contracts for eyewear; therefore, the Court of Federal Claims ultimately ordered the VA "not to enter into any new contracts *for eyewear*" before performing Rule of Two analysis.  *See PDS Consultants*, 132 Fed. Cl. at 129 (emphasis added).  By contrast, the present consolidated action is a direct challenge to the 2017 Class Deviation brought under the APA (*see* NIB Compl. ¶¶ 38–43; Alphapointe Compl. ¶¶ 52–57), and as such, involves requested remedies that transcend specific contracts, such as broad injunctive relief prohibiting the application of the 2017 Class Deviation to all VA procurements (*see* NIB Compl., Request for Relief, ¶¶ 1–2; Alphapointe Compl., Request for Relief, ¶¶ 1– 3).  The NIB Plaintiffs' complaint also alleges that the 2017 Class Deviation violates the OFPPA and the FAR, in addition to the APA (*see* NIB Compl. ¶ 6; *see also* NIB Opp'n at 6), none of which is claimed in the *PDS Consultants* case.  And notably, because the *PDS Consultants* appeal contains a threshold jurisdictional question (*see PDS* Appeal Docketing Statement at 3), it is also entirely possible that the Federal Circuit might not even have occasion to address the viability of the 2017 Class Deviation under the JWOD and VBA, which is the only common legal issue between the *PDS Consultants* case and the consolidated matters before this Court.  (*See infra* Part III.C.)

---

[7] Defendants point to the fact that the National Industries for the Blind is an *amicus* in *PDS Consultants* (*see* Mot. to Stay at 10), but submitting an amicus brief in a case is not equivalent to participating in the case as a party, and thus, the *amicus* status of one of the pertinent entities has no bearing on the Court's analysis here.

This all means that the instant action and the *PDS Consultants* matter are far from being substantially the "same case," as is necessary for the first-filed rule to apply. *UtahAmerican Energy*, 685 F.3d at 1124. Consequently, this Court easily concludes that the 'first-filed' analysis that Defendants undertake in their motion to stay briefing (*see, e.g.*, Mot. to Stay at 8–12) finds no application here.

**B.    The Balance Of Hardships Weighs Heavily In Favor Of Proceeding With The Instant Case**

Nor can Defendants credibly claim that they will suffer more hardship if the instant consolidated cases proceed during the pendency of the Federal Circuit appeal than Plaintiffs will suffer if this Court issues a stay. *See Landis*, 299 U.S. at 255.

1.    <u>Plaintiffs Face More Than A Fair Possibility Of Harm From A Stay</u>

First, it must be acknowledged that there is more than "a fair possibility" that Plaintiffs would suffer harm if the case is stayed. *Id.* This is because the government Defendants have notified the Court that the VA does not intend to suspend the application of the 2017 Class Deviation during the pendency of the appeal before the Federal Circuit (*see* Defs.' Notice at 2), which means that any delay in this Court's resolution of Plaintiffs' challenge risks prolonging the policy-related injuries that Plaintiffs decry in their complaints (*see, e.g.*, Alphapointe Compl. ¶ 8 (alleging that Alphapointe "suffer[s] direct, substantial injury because the VA's action will reduce, if not eliminate, the VA's orders for Alphapointe's products"). What is more, it appears that the government has sought additional time to brief the issues on appeal, thereby extending the appellate process. (*See* Notice Regarding Request for Extension of Br. Sched. in *PDS Consultants*, ECF No. 46.) As a result, if this Court stays the instant proceedings for the duration of the (potentially extended) appeals process, Plaintiffs

will be subjected to the very procurement policy that they allege causes them harm—
i.e., the policy that they say causes them to "lose contracts the VA would otherwise be
obligated to award to them" (*see* NIB Opp'n at 2)—all the while.

It is also clear to the Court that the alleged harm to Plaintiffs is significant:
Plaintiffs aver that they hold VA contracts that will expire and are subject to renewal
within the likely timeframe for the resolution of the *PDS Consultants* appeal (*see* NIB
Resp. to Defs.' Notice at 3; Alphapointe Opp'n at 8), and that these include contracts
for items that were added to the AbilityOne List after 2010, which are newly subject to
the Rule of Two under the 2017 Class Deviation (*see* NIB Resp. to Defs.' Notice at 3).
Thus, even before this Court undertakes to consider Plaintiffs' legal challenge,
Plaintiffs would face a potential loss of VA contracts, and corresponding harm to their
businesses, while waiting for the Federal Circuit appeal to run its course—likely for
more than a year. (*See* NIB Opp'n at 8; Alphapointe Opp'n at 8.)

To be sure, Plaintiffs have not shown that each and every one of the party
business organizations will *necessarily* suffer the feared loss of business during the
pendency of the Federal Circuit appeal, but the burden of demonstrating a hardship that
warrants staying properly filed legal proceedings *is on the movant*, *see Landis*, 299 U.S.
at 255, and when a stay is so requested, the relevant inquiry under *Landis* is whether
there is a fair possibility that the stay of proceedings "will work damage to *some one
else*[,]" *id.* (emphasis added). This Court has little doubt that the VA's unabated
implementation of the procurement policy that Plaintiffs seek to challenge during the
pendency of a prolonged appeals process qualifies as damage, and in this Court's view,

it creates more than a fair possibility that the proposed delay in the instant litigation will harm Plaintiffs' interests.

To be clear: it is the VA's voluntary decision to continue to implement the policy that Plaintiffs are challenging in the instant litigation that makes it next to impossible for Defendants to maintain that there is no possibility that Plaintiffs will suffer harm from a stay. (*See* Hr'g Tr. at 93:6-14 (counsel for the NIB Plaintiffs arguing that Plaintiffs will suffer harm because it will likely be a year and a half until the Federal Circuit comes to a decision, during which time there will be "additional contract decisions that will come up involving post-2010 additions to the procurement list" that will be subject to the 2017 Class Deviation).) And PDS's answer—that there is no harm to Plaintiffs because the VA will not, in fact, be implementing the 2017 Class Deviation anytime soon due to the Court of Federal Claims' decision in *PDS Consultants* (*see* PDS Stay Br. at 6)—is plainly misguided. Not only has the VA now expressly announced its intention to continue to implement the 2017 Class Deviation for at least the duration of the pendency of the Federal Circuit appeal (*see* Defs.' Notice at 2), but the Court of Federal Claims has stayed its own judgment invalidating that policy, *see PDS Consultants*, 2017 WL 3821803, at *1, which means that the VA has every right to continue to implement the 2017 Class Deviation now.[8] What the VA *cannot* do, consistent with equity principles, is to *both* opt to implement the policy that

---

[8] Insofar as Plaintiffs seem to challenge the VA's announced implementation in the context of the instant action, their claims are ripe, and are certainly not "currently moot[,]" as PDS maintains. (PDS Stay Br. at 7.) Mootness requires federal courts to refrain from deciding a matter "if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future[,]" *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (internal quotation marks and citation omitted), and PDS simply cannot show that "there is no reasonable expectation that the alleged violation will recur[,]" *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks, alteration, and citation omitted), where, as here, the alleged violation is currently ongoing.

is allegedly harmful to Plaintiffs *and* simultaneously seek an indefinite delay of the proceedings that Plaintiffs have brought to challenge the policy—at least without good reason.  (*See* Hr'g Tr. at 109:8 (the Court admonishing the government Defendants for trying to "have it both ways" by refusing to agree to suspend the challenged policy at the same time they seek an extended delay of the litigation pending appeal).)  Put another way, having created the conditions by which Plaintiffs now credibly claim that there is a fair possibility that the stay will injure them, equity demands that Defendants demonstrate clearly a justification for the potential harm to the Plaintiffs (presumably rooted in Defendants' own hardship), which, as explained below, Defendants have failed to do.

   2. <u>Defendants Have Not Met Their Burden Of Showing A Clear Case Of Hardship Or Inequity If The Instant Proceedings Continue</u>

  In their motion for a stay, the government Defendants do not even hint at any true hardship that they would have the potential of facing in the absence of a stay of the instant proceedings.  (*See* Mot. to Stay at 1 (claiming, without elaboration, that the consolidated proceedings should be stayed based on "considerations of consistency"); *see also* Reply in Supp. of Defs.' Mot. to Stay ("Defs.' Reply"), ECF No. 31, at 2 (asserting that parallel litigation is inefficient).)  The farthest that the government goes in this regard is to state, as government counsel did at the motion hearing, that if the consolidated cases proceed, the VA would be harmed by "the possibility of inconsistent results[,]" which "would cause significant uncertainty and disruption" to the procurement decisions that VA contracting officers make on a daily basis.  (Hr'g Tr. at 83:8-9.)  At least one other court in this district has rejected this line of argument; it held that the "possibility of inconsistencies in rulings on the same issue"—without

more—is insufficient to constitute a clear case of hardship, *Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004), and under the circumstances presented here, this Court is inclined to agree.

For one thing, the government Defendants have not provided a cogent theory of *how* the VA would face hardship on the basis of potentially inconsistent legal rulings on the issue of its procurement policies, and this omission is especially glaring when there is a realistic possibility that at least one of the hypothesized inconsistent judgments would be stayed until the entire appellate review process runs its course. *Cf. PDS Consultants*, 2017 WL 3821803, at *1. It is also seemingly incumbent upon the government Defendants to explain *why*, in our federal system, inconsistent judgments from courts in different jurisdictions should be considered inherently problematic. There are no doubt countless examples of inconsistent legal rulings in the various federal circuits that impact agency decision making; yet, somehow, the government soldiers on. *See, e.g.*, *Ctr. for Regulatory Reasonableness v. EPA*, 849 F.3d 453, 454 (D.C. Cir. 2017) (acknowledging that the Environmental Protection Agency might employ policies with respect to publicly owned water treatment facilities in the Eighth Circuit that are different than the agency's policies in other circuits). And this Court is unaware of any case in which the government has successfully persuaded a court in one circuit to suspend pending litigation simply and solely because of the potential of an inconsistent ruling rendered in the context of a similar case in another jurisdiction; indeed, with certiorari at stake, this Court imagines that the government might actually relish the opportunity that such inconsistent judgments can provide. *See, e.g.*, Pet. for Writ of Cert., *U.S. Forest Serv. v. Cottonwood Envtl. Law Ctr.*, No. 15-1387, 2016 WL

2866086, at *17–18 (U.S. May 13, 2016); Pet. for Writ of Cert., *U.S. Army Corps of Eng'rs v. Hawkes Co.*, No. 15-290, 2015 WL 5265284, at *12–13 (U.S. Sept. 8, 2015). Thus, the government Defendants have not made a clear showing that the possibility of inconsistent judgments is a hardship, nor have they not articulated any other hardship or inequity to them if this case proceeds. Thus, the balance of the harms clearly weighs in Plaintiffs' favor vis-à-vis the government.

For its part, PDS asserts that it will face significant hardship if the consolidated cases in this Court continue, because PDS is a small business that will would be forced to "spend time and resources litigating the same issues in two forums unnecessarily." (PDS Stay Br. at 5.) But if PDS is burdened by the instant litigation, it has only itself to blame. That is, PDS is involved in the instant consolidated actions only because *it sought to intervene* in the matters before this Court (*see* PDS Mot. to Intervene, ECF No. 7)—i.e., PDS voluntarily jumped into the fray that it now says should be halted on the grounds that its participation is too burdensome to maintain. Needless to say, this argument is patently insubstantial. Moreover, and in any event, there is no question that the purported hardship to PDS in bearing additional litigation costs *pales* in comparison to the hardship Plaintiffs might suffer if they lose VA contracts for the next year or more while the instant consolidated actions are put on hold.

Thus, the Court finds that the VA's plan to continue applying the 2017 Class Deviation through the pendency of the Federal Circuit appeal creates a fair probability that Plaintiffs will be harmed by the delay in litigating their claims in this Court, and no Defendant has credibly claimed any cognizable harm to itself if the instant consolidated

action moves forward.  Therefore, the balance of the equities weighs heavily in favor of permitting the consolidated cases to proceed.

### C.       Considerations of Judicial Economy Do Not Require A Stay

Finally, this Court declines to accept Defendants' most potent contention in support of the motion to stay, which is their insistence that a stay of the instant proceedings would conserve judicial resources.  (*See* Mot. to Stay at 8–11; *see also* PDS Stay Br. at 3–5, 7–9.)  There is no question that "parallel litigation of factually related cases in separate fora is inefficient" and should be avoided.  *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003).  But it is not at all clear that there would be any gains in judicial economy under the circumstances presented here, for two reasons.

First, there is considerable uncertainty regarding whether or not the Federal Circuit will actually reach the legal issue that is common to these cases.  *See Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) (holding that a court can proceed without waiting for another court of coordinate jurisdiction when it "cannot be certain that the other [court] would determine the issue").  This is because, as previously mentioned, the *PDS Consultants* appeal raises a threshold question regarding the jurisdiction of the Court of Federal Claims (*see PDS* Appeal Docketing Statement at 3 (indicating that the first issue noticed for appeal is "[w]hether [the] Court exceeded its jurisdiction by considering a bid protest that did not challenge a new contract award or new solicitation, and by reviewing the validity of underlying statutes and regulations")), and, thus, the Federal Circuit might very well dispose of the case before it without reaching the merits of the legal claims.  If that is the result, then this case would begin again on square one after having been held in abeyance for a year or more for the

conclusion of that appeal, and no efficiency gains would have been realized from having required Plaintiffs to "stand aside[.]"  *Landis*, 299 U.S. at 255.

Second, it is also the case that, even if the Federal Circuit undertakes to reach the merits of the case before it, the appeal that is pending is unlikely to resolve all of the issues that Plaintiffs raise in the instant consolidated matters, primarily because *PDS Consultants* involves an entirely different cause of action.  Although the substance may be similar, the instant cases involve a cause of action that challenges agency decision making in a manner that is distinct from the bid protest action that is pending in the Federal Circuit.  (*See supra* Part III.A.)  Likewise, Plaintiffs' claims here that the VA employed defective *procedures* when it adopted the 2017 Class Deviation (*see* Alphapointe Compl. ¶ 6; NIB Compl. ¶ 6) would not be addressed in any Federal Circuit opinion, and require a wholly separate inquiry that falls on this Court to conduct.  Under these circumstances, Defendants have failed to make a clear showing that a stay would necessarily result in *any* efficiency gains at all, much less the significant savings that would warrant the imposition of such a substantial delay.

## IV.  ORDER

As much as this Court would love to have the benefit of the Federal Circuit's decision prior to its own consideration of the thorny legal issue presented in the instant matters, this Court takes seriously its obligation to "maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties[.]" *Belize Soc. Dev. Ltd.*, 668 F.3d at 732 (internal quotation marks and citation omitted). To this end, in order to succeed in its request for a delay of proceedings, Defendants must make a clear showing that the stay is warranted, *Landis*, 299 U.S. at 255, and this

Court finds that Defendants have fallen far short of demonstrating that the current interest in judicial economy (such as it is) and the hardship to Defendants from proceeding with this consolidated action (whatever it may be) outweighs the harm that a stay of proceedings inflicts upon Plaintiffs (who will purportedly be subjected to the policy they seek to challenge each day that the various cases proceed). Accordingly, it is hereby

**ORDERED** that Defendants' motion to stay the instant proceedings pending the resolution of the *PDS Consultant* appeal (ECF No. 20) is **DENIED**. It is

**FURTHER ORDERED** that, because time is of the essence with respect to resolving the matters at hand, the stay of Defendants' obligation to answer or otherwise respond to the complaints in this case (*see* Minute Order of July 19, 2017) is **LIFTED**, and Defendants are instructed to answer or otherwise respond on or before November 23, 2017.

DATE: November 7, 2017            *Ketanji Brown Jackson*
                                                KETANJI BROWN JACKSON
                                                United States District Judge